THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ronald Eric Louden, Jr., ) | |
| ) | Case No 18-cv-5242 |
| Plaintiff, ) | |
| ) | Judge Jorge L. Alonso |
| vs. ) | |
| ) | |
| Officer Kenneth Carter, Officer Mikhail Geyer ) | |
| and the City of Evanston, ) | |
| ) | |
| Defendants. ) | |

## Memorandum Opinion and Order

Plaintiff Ronald Louden, Jr. filed his first amended complaint alleging federal and state-law claims against Defendants Carter and Geyer stemming from Louden's arrest on June 6, 2018. Defendants move to dismiss Louden's first amended complaint. For the reasons below, the Court grants in part and denies in part Defendants' motion to dismiss [94].

## Background

The Court takes the following facts from Louden's first amended complaint. On June 6, 2018, Defendants Kenneth Carter and Mikhail Geyer, Evanston Police Department detectives, arrested Louden. Louden alleges that Carter and Geyer approached him at approximately 10:30 a.m. with their hands on their service weapons. Fearing for his life, Louden called the police and left the line open. Carter attempted to remove the phone from Louden's possession and pushed him against a nearby vehicle. Geyer and Carter then physically restrained Louden. As Louden protested, the Defendants twisted his arms behind his back and eventually handcuffed him so tight that he lost circulation in his arms and wrist. Defendants then shot Louden with a taser and picked him up by his legs and slammed him into the ground. Louden alleges he was handcuffed at this time and could not protect himself from the fall. He lost consciousness, shattered his front

teeth, and punctured his lip. After regaining consciousness, Louden gestured to his injuries and cried out in pain, but Defendants responded by tasing him again. Defendants then placed Louden in a spit mask, shackled him to a gurney, and physically manipulated his anus and genitals as he struggled to breathe through the spit mask. When Louden yelled for help, Defendants choked him. Defendants transferred Louden to NorthShore Evanston Hospital. Later Defendants transferred Louden to the Evanston police station where he sat for over two days with untreated, open wounds.

Eventually, the State's Attorney's office charged Louden with several felonies connected to that arrest.[1] Louden pled guilty to unlawful use or possession of a weapon by a felon on May 14, 2019. In connection with that plea, Louden stipulated to the following factual basis:

> Judge, if called to testify under oath at trial, Evanston Police Officer Carter, then star 130, would testify that on June 6, 2018 in the evening hours he was working and employed by the Evanston Police Department. And he and his partner had received information from a confidential informant concerning…the defendant, being specifically named by the confidential informant, information that the defendant was in possession of a handgun with an extended magazine standing by a white Lexus at the rear of 2024 Wesley Avenue, Evanston, Illinois, Cook County.
>
> That the officers immediately relocated to that location and observed the defendant, whom they would identify in open court, standing by a vehicle, that vehicle being the same make and model and type as described by the confidential informant.
>
> The officer would further testify he has had prior interactions with this defendant and knew him by name. That when they arrived on scene, that the officer

---

[1] Although the prior factual allegations were taken from Louden's first amended complaint, the Court takes facts related to Plaintiff's guilty plea from Defendant's motion to dismiss and the filed transcript of Plaintiff's May 14, 2019 guilty plea hearing before the Honorable Aleksandra N. Gillespie in the Circuit Court of Cook County. The Court may take judicial notice of facts "not subject to reasonable dispute" and either (1) "generally known within the territorial jurisdiction of the trial court;" or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *General Elec. Capital Corp., v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997); *see also Scholes v. Lehmann*, 56 F.3d 750, 762 (7th Cir. 1995) (allowing judicial notice of facts recited in a plea agreement). The Court finds that the plea hearing transcript satisfies these requirements and takes judicial notice of Plaintiff's guilty plea and the corresponding factual basis.

observed the defendant place an object into the vehicle through an open front passenger window. That when officers approached, the defendant began to block that window and appeared very nervous. As officers spoke with the defendant, the defendant started to indicate that he was going to die and called, using his cell phone, 911.

The officers then tried verbally to get the defendant to move away from the open window and then tried to physically move him. And as the officers tried to diffuse the situation, they had concern because the defendant kept stating that he was going to die, and that the defendant would not move away from the window. Officers then tried to place handcuffs on the defendant. The defendant stiffened up his body and tried to keep his arms straight. Officer Carter numerous times told this defendant that he was going to be tased. The defendant did ultimately get his hands free at which point the officers deployed their taser and tased the defendant who fell and hit his mouth on a concrete parking barrier and appeared to be injured. Officers did recover from that car in the front passenger side a loaded .9 millimeter handgun, as well as some cannabis. An ambulance was called for the defendant for his injuries.

Further the evidence would show that the defendant has a prior felony conviction for possession of a controlled substance with intent to deliver within one thousand feet of a school under case number 97 CR 1977001. And further…one of the defendant's priors includes a Class 3 under case number 16 C2 20487, which makes the current case extendable as that was within the last ten years. So stipulated?

Later, Louden filed the present lawsuit alleging various federal and state-law claims connected to the night of his arrest. In summary, Louden asserts the following claims: (I) excessive force under the Fourth Amendment and 42 U.S.C. § 1983; (II) false arrest under the Fourth Amendment and 42 U.S.C. § 1983; (III) conspiracy under 42 U.S.C. § 1983; (IV) inadequate medical care under the Fourth Amendment and 42 U.S.C. § 1983; (V) state-law battery; (VI) state-law intentional infliction of emotional distress; and (VII) indemnification against the City of Evanston. Defendants filed a motion to dismiss all seven counts.

## Standard of Review

The Court may dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P.

12(b)(6). Under federal notice-pleading requirements, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not provide detailed factual allegations, but mere conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a claim must be plausible. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Allegations that are as consistent with lawful conduct as they are with unlawful conduct are not sufficient; rather, plaintiffs must include allegations that "nudg[e] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In considering a motion to dismiss, the Court accepts as true the complaint's factual allegations and draws permissible inferences in the plaintiff's favor. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Conclusory allegations are not assumed true, nor are legal conclusions. *Iqbal*, 556 U.S. at 680 & 681 (noting that a "legal conclusion" was "not entitled to the assumption of truth[;]" and rejecting, as conclusory, allegations that "'petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement"). The notice-pleading rule "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

## Discussion

Defendants move to dismiss all seven counts in Louden's first amended complaint. The Court addresses the parties' arguments under each count below.

I.      **Excessive Force**

Although police officers may use force in certain circumstances, the Fourth Amendment protects against the use of excessive force. *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir.

4

2015) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Courts analyze excessive force cases under an objective reasonableness standard; meaning that the officers' actions must be "'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. This analysis is inherently fact-dependent, requiring consideration of such factors as the crime's severity, whether the person posed an immediate safety threat, and whether the person actively resisted the officers. *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 472-73 (7th Cir. 2015) (citing *Graham*, 490 U.S. at 396).

Defendants argue two grounds for dismissal of Louden's excessive force claim: (1) judicial estoppel; and (2) qualified immunity. The Court considers each argument in turn.

### A. Judicial Estoppel

"Judicial estoppel is a doctrine of discretion that is intended to protect the integrity of the judicial process." *See Juza v. Wells Fargo Bank, N.A.*, 794 Fed. App'x 529, 535 (7th Cir. 2020). This doctrine "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227, n.8 (2000). In applying judicial estoppel, courts typically consider three factors: "(1) whether the party's later position was 'clearly inconsistent' with its earlier position; (2) whether the party against whom estoppel is asserted succeeded in persuading the court in the earlier proceeding; and (3) whether the party 'seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 661 (7th Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 750–51). These factors are neither exhaustive nor "inflexible prerequisites." *New Hampshire*, 532 U.S. at 751. Rather, they serve as "general guideposts" considered against "all

the relevant equities in any given case." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013).

The Court declines to apply judicial estoppel here. Much of the analysis with respect to Defendants' *Heck* doctrine argument in the prior motion to dismiss, *see* [31], applies equally here. Again, the issues decided at the plea hearing are not identical—and therefore not clearly inconsistent—to those at issue in this case. The Court will not rehash the entire basis for its prior ruling except to say that even if Louden admitted to resisting arrest at one point, Louden's criminal case never litigated whether Defendants' actions, particularly those after the arrest, were objectively reasonable or whether those actions violated any constitutional right. Thus, Louden did not prevail in a prior ruling that is necessarily inconsistent with allegations in his first amended complaint.

## B. Qualified Immunity

Next, Defendants argue that qualified immunity bars Louden's excessive force claim. Qualified immunity protects government officials from civil liability under section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to show: (1) a constitutional violation; and (2) that the constitutional right was clearly established when the alleged violation occurred. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

A plaintiff can establish the second element in one of two ways. First, a plaintiff can identify a reasonably analogous case that articulates the right at issue and concerns a similar set of facts. *Id.* (citation omitted). The case need not be identical, but some settled authority must put a reasonable officer on notice that his actions violated the Constitution. *Id.* at 702 (citing

6

*Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 308, 193 L.Ed.2d 255 (2015)). Alternatively, a plaintiff can demonstrate that the violation was so obvious that any reasonable person would have recognized it violated the law. *Id.* at 701 (citation omitted). Under either approach, existing precedent must place the statutory or constitutional question "beyond debate." *Id.* at 702 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Finally, the Court views the constitutional right in light of the case's specific context. *Mullenix*, 577 U.S. at 11-12.

Here, the dismissal based on qualified immunity is unwarranted and premature. First, Louden's allegations establish a constitutional violation, as discussed previously. Second, the constitutional right to be free from excessive force was clearly established at the time of Louden's allegations. *See Becker v. Elfreich*, 821 F.3d 920, 928 (7th Cir. 2016). And though the right to be free from excessive force must be clear to a reasonable officer at the scene, the allegations here would indicate to a reasonable officer that the alleged force was excessive. For instance, Louden alleges that officers choked him after handcuffing him and "physically manipulated his anus and genitals" after shackling him to a gurney.

Additionally, Defendants' reliance on the plea hearing is not dispositive. The Court already determined that the factual basis stipulated at the plea hearing doesn't cover conduct that occurred after the arrest. As such, the current factual record before the Court does not provide conclusive evidence that qualified immunity applies. *See, e.g.*, *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (because "one of the most salient benefits of qualified immunity is protection from pretrial discovery," a court may defer its qualified immunity ruling only if the "pleadings assert facts which, if true, would overcome the defense of qualified immunity") (internal quotation marks omitted). Louden's allegations, taken as true, could overcome a qualified immunity defense. The motion to dismiss, therefore, is denied as to Count I.

**II.     False Arrest**

The Fourth Amendment also protects against unlawful detention without probable cause. *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 670 (7th Cir. 2018). The Seventh Circuit makes clear that the Fourth Amendment protects against unreasonable searches and seizures in the absence of probable cause—not against some right not to be prosecuted without probable cause. *Serino v. Hensley*, 735 F.3d 588, 593 (7th Cir. 2013). The Court construes Louden's false arrest claim against this backdrop as a claim for unlawful detention without probable cause.

Defendants invoke the principle identified in *Heck v. Humphrey*, which bars a claim for damages under section 1983 that challenges a conviction or imprisonment, or any actions that would necessarily invalidate a conviction, until the conviction is set aside. 512 U.S. 477, 486-87 (1994). Plaintiff responds that the Court already rejected Defendants' *Heck* defense in its ruling on Defendants' first motion to dismiss and should not disturb that prior decision. This is partially true: the Court rejected Defendants' *Heck* doctrine defense as it relates to Louden's excessive force claim—but not as it relates to a Fourth Amendment false-arrest claim. As such, *Heck*'s interplay with the false arrest claim requires a fresh analysis.

To that end, the Court finds that the *Heck* doctrine does not bar Louden's false arrest claim. The Supreme Court explains that *Heck* precludes a prisoner from raising a claim under section 1983 "which, if true, would have established the invalidity of his outstanding conviction." *Wallace v. Kato*, 549 U.S. 384, 392 (2007). But *Heck* doesn't bar challenges to searches and seizures, or false arrests, that do not necessarily affect a conviction's validity. *Id.* at 397. As a result, the Court must examine what Louden asks for to determine whether he may pursue his claim or whether it is barred by *Heck*. *Mordi v. Ziegler*, 870 F.3d 703, 707 (7th Cir. 2017).

8

The Seventh Circuit's decision in *Mordi v. Ziegler* is instructive on this point. There, the plaintiff brought claims under section 1983 against officers alleging they did not have probable cause to initiate a traffic stop against him. *Id.* at 705. State troopers pulled over the plaintiff while driving on a highway and cited him for a minor traffic violation. *Id.* Near the conclusion of the stop, however, officers asked the plaintiff whether they could search his car for drugs. *Id.* at 706. The plaintiff said no. *Id.* Some 20 minute into the stop, an officer radioed for a drug-sniffing dog, which arrived 10 minutes later. *Id.* The dog sniffed the car and altered the officers to drugs. *Id.* Officers then searched the vehicle and found crack cocaine in a duffle bag in the bag seat. *Id.* Eventually the plaintiff pled guilty to federal drug charges for possession with intent to deliver. *Id.* But the plaintiff also filed a civil suit alleging that the officers racially profiled him and did not have probable cause to prolong the stop. *Id.* at 706-07.

The Seventh Circuit held that *Heck* did not bar the plaintiff's Fourth Amendment claims. *Id.* at 707-08. First, the court determined that even if the plaintiff prevailed on his prolonged-detention and racial-profiling claims, his conviction would still be secure. *Id.* at 707. Indeed, the court recognized that "a court's decision not to suppress illegally seized evidence can lead to a conviction without blotting out a § 1983 challenge to the seizure." *Id.* (quoting *Evans v. Poskon*, 603 F.3d 362, 363-63 (7th Cir. 2010). This is because courts do not suppress a person's body. *Id.* Second, the Seventh Circuit stated that even where a litigant makes some *Heck*-barred contentions, the proper course of action is to carve off any *Heck*-barred contentions and proceed with what remains. *Id.* at 708.

In this case, the Court concludes that Louden's Fourth Amendment false arrest claim is not *Heck*-barred because it does not necessarily imply the invalidity of his criminal conviction. This case is close, but what Louden is really asking for is a determination that officers did not

9

have probable cause to approach him initially—not that he did not unlawfully possess a weapon. As such, a ruling in Louden's favor would not undermine the validity of his conviction.

To be sure, there are some allegations that cannot be reconciled with the prosecutor's factual basis.[2] For instance, Louden alleges that he was "visibly unarmed" when officers approached him. [93] at ¶1. Louden likely meant that a weapon wasn't visible at the time officers approached him—but the Court will not permit Louden to argue that he didn't possess a weapon. Regardless, Seventh Circuit guidance dictates that the Court carve out any *Heck*-barred contentions and allow Louden to proceed on what remains. Louden, therefore, may proceed on a Fourth Amendment false arrest claim based on allegations that Defendants Geyer and Carter did not have information from a confidential source that gave them probable cause to approach him.

### III. Conspiracy

Count III asserts a claim for conspiracy under 42 U.S.C. § 1983. Under section 1983, a conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988). To establish a *prima facie* case of civil conspiracy, a plaintiff must show "an express or implied agreement among defendants to deprive a plaintiff of his or her constitutional rights," and the "actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Id.* at 442. Although the Seventh Circuit rejects a heightened pleading standard for civil conspiracy claims under section

---

[2] The factual basis for Louden's plea hearing also contains contradictory statements that Defendants did, in fact, receive information from a confidential source prior to approaching Louden. It is unclear whether collateral estoppel, a doctrine similar in effect to the *Heck*-bar, might prevent Louden from disputing these statements because the parties did not raise that issue. In any event, even if that legal theory applied, that would be an issue better suited to summary judgment and a complete factual record.

10

1983, it also states that "the plaintiff must meet a high standard of plausibility" when alleging "a vast, encompassing conspiracy." *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009). The Court must dismiss a complaint consisting of nothing more than "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678.

Here, the Court finds that Louden fails to state a claim for civil conspiracy. The first amended complaint only contains conclusory allegations that fail to adequately allege an agreement between Carter and Geyer to violate one of Louden's constitutional rights. Indeed, Louden doesn't describe the general purpose behind any alleged conspiracy. In fact, paragraph 43 of the first amended complaint contains the only allegation indicating any agreement or purpose. It reads: "As described more fully above, Defendants CARTER and GEYER reached an express or implied agreement to violate Plaintiff's constitutional rights as described in the preceding paragraphs." The Court finds these allegations conclusory and further finds that they fail to identify any purpose that Defendants agreed to conspire toward or what that conspiracy sought to accomplish. As such, the Court dismisses Count III.

## IV. Inadequate Medical Care

Count IV alleges a claim for inadequate medical care under the Fourth Amendment. To start, the Court must identify which constitutional provision applies. Defendants cite *Greene v. Pollard*, 335 Fed. Appx. 612 (7th Cir. 2009), a case involving the Eighth Amendment, for the relevant standard applicable to Louden's inadequate medical care claim. Louden, on the other hand, cites to no case law and fails to substantively respond to Defendants' arguments on this claim. Nevertheless, the Court finds that the Fourth Amendment, not the Eighth or Fourteenth Amendment (applied in other pretrial detention contexts), provides the applicable constitutional source of authority.

11

The Seventh Circuit has held that "the Fourth Amendment governs the period of confinement between arrest without a warrant and the [probable cause determination][.]" *Currie v. Chhabra*, 728 F.3d 626, 629 (7th Cir. 2013). After a probable cause finding is made, the Fourteenth Amendment protects a pretrial detainee. *Id.* at 629-30. Since Louden's allegations took place between his arrest (without a warrant) and a *Gernstein* hearing, the Fourth Amendment applies.

The difference between the Fourth and Fourteenth Amendment is ultimately immaterial since the standard for both is now the same. *See Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020). Under either, an arrestee must demonstrate that an official's actions were "objectively unreasonable under the circumstances." *Id.* Reasonableness, in turn, is determined in light of the totality of the circumstances. *See McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018) (Fourteenth Amendment); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 600 (7th Cir. 2011) (Fourth Amendment). Courts consider four factors when assessing the objective reasonableness of a police officer's response to a plaintiff's medical needs: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). A plaintiff "must also show that the defendants' conduct caused the harm of which [the plaintiff] complains." *Id.*

In this case, the allegations are sufficient to state a claim for deliberate indifference. Louden alleges, among other things, that Defendants shattered his front teeth and punctured his lips and that he sat in the Evanston police station for over two days with untreated, open wounds. These allegations suffice to show obvious conditions that required medical attention.

Defendants concede that these allegations are obvious enough to warrant medical attention, but argue that, as non-medical personnel, they can rely on the expertise of medical professionals regarding the treatment Louden received. Without question, non-medical professionals are entitled to rely on a medical professional's judgment without subjecting themselves to liability under section 1983. *See Estate of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017). And Defendants raise salient points that officers transferred Louden to Evanston Hospital after being arrested, and doctors presumably treated him there before transferring him to the police station. These arguments may very well carry the day at summary judgment, but the record is simply insufficient at this stage to grant dismissal based on this affirmative defense. Accordingly, the Court denies the motion to dismiss with respect to Count IV.

## V. Battery and Intentional Infliction of Emotion Distress

Defendants argue two grounds for dismissal of these counts V (battery) and VI (IIED): (1) the Court should decline to exercise supplemental jurisdiction over Louden's state-law claims; and (2) these claims should be dismissed under the Tort Immunity Act. The Court is not persuaded by either argument. First, the Court sees no good reason to decline exercising supplemental jurisdiction over Louden's battery or IIED claim. Defendants argue that Louden fails to state a claim for his federal-law counts, but the Court disagrees as detailed above and therefore will continue to exercise supplemental jurisdiction over the remaining state-law claims.

Second, the Court declines to dismiss Louden's state-law claims based on the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Act" or "Tort Immunity Act"). Under the Act, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202. The Act defines willful and wanton conduct as "a course of action

13

which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210. This conduct "consists of more than mere inadvertence, incompetence, or unskillfulness." *Stevenson v. City of Chicago*, Case No. 17-cv-4839, 2018 WL 1784142, at *32 (N.D. Ill. April 13, 2018) (internal citations omitted).

The Court finds that dismissal based on the Tort Immunity Act is not warranted at this time. Louden sufficiently alleges conduct that implicates a conscious disregard for the safety of others. For example, Louden alleges that officers choked him as he shouted for help, and that Defendants picked him up and slammed him into the ground causing his teeth to shatter and lip to split. These allegations are enough to satisfy the definition of willful and wanton conduct under the Tort Immunity Act. What's more, like Louden's excessive force claim, his plea agreement is not necessarily inconsistent with these allegations—particular the post-arrest allegations. Accordingly, the Court denies the motion to dismiss with respect to Count V.[3]

## Conclusion

The Court grants in part and denies in part Defendant's motion to dismiss [94]. The motion to dismiss is granted with respect to Count II. The motion to dismiss is denied with respect to Counts I, III, IV, V, VI, and VII. Defendants' answer is due on before December 27, 2021.

**SO ORDERED.**                                                ENTERED: December 13, 2021

**HON. JORGE ALONSO**
**United States District Judge**

---

[3] Because Louden's excessive force, inadequate medical care, and battery claims remain, dismissal of the indemnification count (Count VI) is not warranted.